560 So.2d 927 (1990)
Charles R. MOORE, et al.
v.
Governor "Buddy" ROEMER, et al.
No. 89 CA 1496.
Court of Appeal of Louisiana, First Circuit.
April 10, 1990.
Writ Denied May 18, 1990.
*928 Philip G. Hunter, Alexandria, for plaintiffs-appellants Charles R. Moore, et al.
Oliver Williams, Baton Rouge, for Governor "Buddy" Roemer.
Roy Mongrue, Baton Rouge, for Attorney General William Guste.
Stephen Cavanaugh, Baton Rouge, for Office of Workers' Compensation.
Before COVINGTON, C.J., and WATKINS, SHORTESS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
This suit challenges the constitutionality of the Louisiana Worker's Compensation Law, LSA-R.S. 23:1021, et seq. as revised by Act 938 of 1988.
Two worker's compensation claimants (Henry Rubin and Otis Burr) and a practicing attorney (Charles R. Moore), who represents compensation claimants, filed suit for declaratory and injunctive relief. The defendants are Charles "Buddy" Roemer, Governor of the State of Louisiana; the Office of Worker's Compensation Administration; the Director of the Office of Worker's Compensation Administration; Steve Cavanaugh, Assistant Secretary of Labor for the State of Louisiana; Phyllis Coleman Mouton, Secretary of Labor for the State of Louisiana; and the State of Louisiana. The plaintiffs alleged that Act 938 of 1988 violates several provisions of the Louisiana Constitution of 1974 and deprives them of rights protected by both the federal and the state constitutions. The act contains numerous changes to the Louisiana Worker's Compensation Law, but the challenges of the plaintiffs are directed to those provisions *929 of the act which establish a new procedure for resolving disputed worker's compensation claims. Finding that the statutory provisions were constitutional, the district court dismissed the suit. This devolutive appeal followed.
We reverse the district court's judgment; we hold that Act 938 of 1988 violates Article V, Section 16 of the Louisiana Constitution providing for original jurisdiction in the district courts.

CLAIMING COMPENSATIONTHEN AND NOW
From 1914 until 1984 a worker who could not reach agreement with his employer in regard to his claim for compensation benefits caused by a work-related accident filed a civil law suit at the district court level. In 1983 the Louisiana Legislature enacted a broad revision of worker's compensation law in this state and established the Office of Worker's Compensation Administration (OWC). Act 938 of 1988 brought still more changes, not the least of which was the appointment of OWC hearing officers with exclusive original jurisdiction over all worker's compensation claims. The law in effect since 1984 was explained by Justice Dennis in Turner v. Maryland Casualty Co., 518 So.2d 1011, 1014-1015 (La.1988). A review of the Justice's explanation highlights the differences we encounter in the revised law.

STATUTORY PROVISIONS REGARDING ADMINISTRATION OF CLAIMS
Informal Dispute Resolution
Act 1 of the 1983 Extraordinary Session created the Office of Worker's Compensation Administration and established administrative procedures for the informal resolution of claims. Under the procedures, an employee, his dependent, the employer, or the insurer may file a claim regarding worker's compensation with the director when a dispute arises over compensation in connection with a worker's injury resulting in excess of seven days lost time or death. La.R.S. 23:1310. Within thirty days after receipt of the claim, the director shall issue a recommendation for resolution of the dispute to the parties. La.R.S. 23:1310.1. The recommendation is advisory only and, although admissible into evidence, shall not be accorded any presumption of correctness. Id. Each party is instructed by the recommendation to notify the director of his acceptance or rejection of the recommendation within thirty days of his receipt thereof. Id.; Rule LWC-19. A party who fails to notify the director timely of his rejection is conclusively presumed to have accepted the recommendation. La.R.S. 23:1310.1.

Trial of Civil Action
If any party rejects the recommendation of the director, the employee or his dependent may file a civil action in court on the claim within sixty days of the receipt of the recommendation or within the period established in La.R.S. 23:1209, whichever occurs last. La.R.S. 23:1311(A). A suit for compensation is premature if the claim has not been submitted to the director for informal resolution. La.R.S. 23:1314(A). However, this objection is waived by the defendant if the dilatory exception of prematurity is not timely filed. La.C.C.P. art. 926, 928; cf. Disotell v. Wadsworth Golf Construction, 500 So.2d 371, 373 (La.1987); Bailey v. Pacific Marine Insurance Co., 509 So.2d 508, 511-12 (La.App. 3rd Cir. 1987), cert. den. 510 So.2d 377 (La.1987); Moody v. K & B Equipment Co., 508 So.2d 927, 928 (La.App. 4th Cir.1987); Brignac v. Liberty Mutual Insurance Co., 496 So.2d 1306, 1308 (La.App. 3d Cir.1986); Rich v. Geosource Wireline Services, Inc., 490 So.2d 1165, 1172 (La. App. 3d Cir.1986) (failure to obtain recommendation prior to bringing action to modify); Watson v. Amite Milling Co., Inc., 504 So.2d 1149, 1153 (La.App. 5th Cir.1987) (filing before 1331(C) period had elapsed); Dupre v. Travelers Insurance Co., So.2d 1279, 1282 (La.App. 3d Cir. 1985) (failure to follow pleading requirements of 23:1314).
*930 Modification of an Agreed Award
If the parties have accepted the director's recommendation either expressly or tacitly, either party may apply for a recommended modification of the agreed award at any time after six months from the date of the acceptance. La.R.S. 23:1331(C). Disotell v. Wadsworth Golf Construction, supra, 500 So.2d at 373; Bailey v. Pacific Marine Insurance Co., supra, 509 So.2d at 511-12; Moody v. K & B Equipment Co., supra, 508 So.2d at 928; Brignac v. Liberty Mutual Insurance Co., supra, 496 So.2d at 1308; Rich v. Geosource Wireline Services, Inc., supra, 490 So.2d at 1172; Arthur v. Union Underwear Co., Inc., 492 So.2d 873, 876 (La.App. 3rd Cir.1986). See W. Malone & A. Johnson, Worker's Compensation Law & Practice § 284 (2nd ed. 1980; Supp. 1987). Thereupon, the director is required to review the application and issue a new recommendation. Id. The timely rejection of the new recommendation by any party permits the employee or his dependent to litigate the claim in court by filing a timely suit. La.R.S. 23:1311. (Footnote omitted.)
Turner v. Maryland Casualty Co., 518 So.2d at 1014-1015.
Under the law as amended by Act 938 of 1988 a claim is commenced by the filing of a notice of injury with the director of the OWC. LSA-R.S. 23:1310.3. The director oversees all matters pertaining to such injuries until such time as the director is notified, by the filing of a petition by a party, that there is a controverted issue which cannot be resolved by the parties. Upon receipt of the petition, the director assigns the matter to one of the nine hearing officers whose positions were created by Act 938. LSA-R.S. 23:1310.3. See also LSA-R.S. 23:1310.1. A defendant's answer is due within 15 days from receipt of the petition; this period may be extended by 10 days. LSA-R.S. 23:1310.3A(2). The hearing officers are vested with original exclusive jurisdiction over all claims filed pursuant to the Worker's Compensation Law. LSA-R.S. 23:1310.3A(4). The hearing officer conducts a hearing at which each party is permitted to present evidence. The hearing officer is not bound by technical rules of evidence or procedure, but all findings of fact must be based upon competent evidence. LSA-R.S. 23:1317A. Upon completion of such hearing or hearings, the hearing officer shall make such order, decision, or award as is proper, just, and equitable. LSA-R.S. 23:1310.5A. Any order, decision, or award made by the hearing officer shall be considered as final, unless appealed to an appeals panel within 10 days of receipt by certified mail of the order, decision, or award of the hearing officer. LSA-R.S. 23:1310.5A and B. The appeals panel consists of three other hearing officers assigned by the director; the panel may modify the decision of the hearing officer only if it determines that such decision was against the clear weight of the evidence or contrary to law. LSA-R.S. 23:1310.5A. The order, decision, or award of the appeals panel[1] shall be final and conclusive upon all questions within its jurisdiction between the parties, unless a timely appeal is taken to the circuit court of appeal for the judicial district in which the petition was filed. LSA-R.S. 23:1310.5B. The entire process bypasses the district court, except for the enforcement of the orders of the hearing officers. LSA-R.S. 23:1310.7.[2]
To summarize, the 1988 legislation excludes the district court from the worker's compensation adjudication system. It vests the first and only "adjudication" of a worker's claim with an OWC hearing officer. Thereafter, the claimant or the employer *931 has a right to appeal to the circuit court of appeal.

JUDICIAL REVIEW OF STATUTE
On appeal plaintiffs argue that Act 938 violates a number of Louisiana constitutional provisions, requiring this court to declare Act 938 unconstitutional. The alleged violations are as follows:
1. The act divests the district courts of original jurisdiction of worker's compensation cases in violation of Article V, Section 16.
2. The act divests the district court of exclusive jurisdiction over cases involving the state and its political subdivisions as defendant in violation of Article V, Section 16.
3. The act confers original jurisdiction on the courts of appeal in violation of Article V, Section 10.
4. The act violates the separation of powers mandate of Article V, Sections 1 and 2, by vesting judicial power in executive branch employees.
5. The act provides for executive appointment of judges called "hearing officers" in violation of Article V, Section 22.
6. The act violates the equal protection and due process provisions of both the federal and state constitutions by denying compensation claimants the same access to district courts enjoyed by employers and other administrative litigants.
"A person attacking the constitutionality of a statute of public purpose must show clearly the constitutional aim to deny the legislature the power to enact the legislation." Louisiana Recovery District v. Taxpayers, 529 So.2d 384, 387 (La. 1988). The requirement arises because, unlike the federal constitution which grants enumerated powers to Congress, a state constitution limits the otherwise plenary power of the people exercised through the state's legislature. The legislature has the power to enact any legislation which the state constitution does not prohibit. Id. See, Swift v. State, 342 So.2d 191 (La.1977).
Unless fundamental rights are involved, there is a strong presumption that the legislature acted within its constitutional powers when it enacted the statute. Louisiana Recovery District v. Taxpayers, supra. Because a worker's compensation claim does not involve fundamental rights, Bazley v. Tortorich, 397 So.2d 475 (La. 1981), we must accord the legislation the presumption the law requires and hold that it is unconstitutional only if we conclude that it has been shown, clearly and convincingly, that the constitutional aim was to deny the legislature the power to enact the statute. Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971).

THE JUDICIARY ARTICLE
Plaintiffs contend that the provisions of Act 938 of 1988 which vest exclusive original jurisdiction over all claims filed under the Worker's Compensation Law with the OWC hearing officers is in violation of Article V, Section 16 of the Louisiana Constitution of 1974. The issue is whether the legislature can constitutionally divest the district courts of subject matter jurisdiction of worker's compensation claims.
Section 16 of the Judiciary Article establishes the jurisdiction of the district courts, as follows:
(A) Original Jurisdiction. Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters. It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office or other public position; civil or political rights; probate and succession matters; the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships.
(B) Appellate Jurisdiction. A district court shall have appellate jurisdiction as provided by law.
The starting point for determining if the legislature can divest the district court of *932 jurisdiction over worker's compensation cases and vest that jurisdiction exclusively in the OWC is the language, "[e]xcept as otherwise authorized by this constitution...." The Judiciary Committee for the Louisiana Constitutional Convention of 1973 considered, but rejected, a proposal which would have empowered the legislature to change the jurisdiction of the district courts. The Judiciary Committee had a working draft of Section 16; following the lead of the Louisiana State Law Institute Projet,[3] the draft conferred jurisdiction "unless otherwise provided in this constitution or by law." [Emphasis supplied; Draft A, Sec. 21; Projet, Art. VI, Sec. 26.]
"That [proposed] approach allowed the legislature to divest the district court of any jurisdiction the constitution did not state was exclusive in the district court. The committee, however, did not recommend such broad authority in the legislature.... The final styling process resulted in the language as adopted, `[e]xcept as otherwise authorized by this constitution....' It is clear then, that the legislature can divest the district courts of jurisdiction only if the constitution contains an authorization for it to do so." [Emphasis in original; Hargrave,[4] "The Judiciary Article of the Louisiana Constitution of 1974," 37 La.L.Rev. 765, 811 (1977) ]. The express prohibition of Section 16(A) precludes a conclusion that the 1988 worker's compensation amendments were enacted pursuant to the legislature's plenary powers.
One example of a divestiture of the original jurisdiction of the district courts "otherwise authorized" by the constitution is the original jurisdiction vested in the Louisiana Civil Service Commission. The Louisiana Civil Service Commission has the exclusive power and authority to hear and decide all removal and disciplinary cases. La. Const. Art. X, § 12(A). In Foreman v. Falgout, 503 So.2d 517 (La.App. 1st Cir.1986), we held that the district court lacked subject matter jurisdiction of the plaintiff's tort claim. The plaintiff, an employee of the Louisiana Department of Health and Human Resources, had filed suit against the under-secretary for DHHR and other individuals, who were not state employees, and alleged a conspiracy to intentionally interfere with his employment rights. We concluded that the constitutional grant of power to the Louisiana Civil Service Commission over classified civil service employeremployee disputes that are employment related divested district courts of original jurisdiction.[5]Accord, Barenis v. Gerace, 357 So.2d 892 (La.App. 1st Cir.), writ denied, 359 So.2d 1308 (La. 1978).
Another example of a divestiture of the original jurisdiction of the district courts "otherwise authorized" by the constitution is the original jurisdiction vested in the Louisiana Public Service Commission. La. Const. Art. IV, § 21. We recently affirmed a trial court judgment declining jurisdiction over one issue in a contract case on the ground that the issue fell within the exclusive sphere of the commission's rate-making "jurisdiction." O'Niell v. LP & L, 558 So.2d 1235 (La.App. 1st Cir.1990).[6]
In addition to serving as examples of jurisdiction "otherwise authorized" by the constitution, the above cited cases illustrate *933 the effect of a constitutional grant of exclusive original jurisdiction, such as the grant to district courts of cases against the state as a defendant, which grant we find in the second sentence of Section 16(A). The sentence "lists the types of cases in which the district courts have exclusive original jurisdiction.... [S]uch cases cannot be included by law [statute] in the jurisdiction of courts of limited or specialized original jurisdiction." Hargrave, "The Judiciary Article of the Louisiana Constitution of 1974," 37 La.L.Rev. 765, 810 (1977). This conclusion is consistent with our holdings in O'Niell v. LP & L and Foreman v. Falgout. In the latter case we specifically stated that, but for the exclusive nature of the jurisdiction of the Louisiana Civil Service Commission, the commission and the district courts would have concurrent jurisdiction. Foreman v. Falgout, supra at 518-19.
Since one of the plaintiffs in the instant case is a state worker, the state is a defendant. Exclusive original jurisdiction over that plaintiff's claim, having been vested in the district courts by the constitution, precludes concurrent jurisdiction in the OWC.[7]
While not exclusive, Section 16(A) provides that, "... a district court shall have original jurisdiction of all civil ... matters." If a worker's compensation claim is a civil matter, and we hold that it is, the district courts cannot be divested of jurisdiction of these claims absent a constitutional amendment.
"CIVIL MATTERS"
We are cognizant of the basic rule of statutory interpretation which provides that "if a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional, or raise grave and doubtful constitutional questions, the court will adopt the interpretation of the statute which without doing violence to its language, will maintain its constitutionality." Hondroulis v. Schumacher, 546 So.2d 466, 474-475 (La.1989).
In order to find those provisions of Act 938 of 1988 which divest the district courts of original jurisdiction constitutionally valid, we would have to hold that the legislature intended to change the classification of a claim for worker's compensation benefits as a civil cause of action in Louisiana, thus removing it from the "civil matters" over which the district courts have jurisdiction. We decline to read the amendments in that fashion because: (1) such an interpretation is contraindicated by the language of the amendments, and (2) such an interpretation would do violence to the intent of the Constitution.
The legislation establishing the procedure for OWC hearings is replete with terms such as "case," "issues in dispute," "judgment," and "suits." In LSA-R.S. 23:1317(B) the legislature has provided that costs may be awarded "as in other civil proceedings." The use of the word "other" connotes a legislative intent that a worker's compensation claim is still a civil proceeding. If the legislature had intended otherwise, it would have left out the word "other." The wording of the 1988 amendments to the Louisiana Worker's Compensation Law indicates a legislative intent to change the forum for the adjudication of a worker's claim; it does not indicate an intent *934 to exercise the legislative power of eliminating a cause of action. We must read the words of the amendments "in their most usual signification and in the sense in which the lawmakers have used them in other legislation." Bazley v. Tortorich, 397 So.2d at 482.
In our opinion an administrative agency determination such as would issue from an OWC hearing is a "civil matter" as was contemplated by the Constitutional Convention delegates who drafted the Judiciary Article. The delegates purposefully adopted the term "matters" instead of "cases." Use of "matters" avoided the serious case or controversy questions often fostered by the term "cases." 37 La.L. Rev. at 803-804. The Judiciary Article classifies cases or matters as "civil," "criminal," "juvenile" and "family." These are the traditional classifications into which are placed the multifarious matters handled by our courts. There are no other classifications in the article, and none can be added if these provisions of our constitution are to be construed in the context which was intended.[8] To find that the legislature can change the classification of these matters at will would permit it to circumvent the provisions of Article V, Section 16(A) and by statute divest the district courts of original jurisdiction. Additionally, our designation is supported by the jurisprudence. In Touchette v. City of Rayne Mun. Fire & Police Civil Ser. Bd., 321 So.2d 62 (La.App. 3d Cir.1975), the court held that it had jurisdiction, under the 1974 Constitution, of an appeal from a district court judgment on a review of an administrative agency determination because the district court review was a civil matter decided within its circuit.
Accordingly, we conclude that since a worker's compensation claim is a civil matter within the original jurisdiction of the district court, and since Act 938 of 1988 vests the claims exclusively with the OWC, the legislation has "in effect" divested the district courts of original jurisdiction in direct violation of Article V, Section 16(A) of the Louisiana Constitution.

APPELLATE JURISDICTION
Defendants contend that nothing in the constitution prohibits the legislature from providing direct review by the courts of appeal of decisions of OWC hearing officers, relying upon Article V, Section 10(B) and our decision in Marine Shale Processors, Inc. v. Department of Environmental Quality, 543 So.2d 487 (La.App. 1st Cir.1989). The fallacy of the argument is exposed once one considers the crucial distinction between public rights and private rights.
Article V, Section 10(B) provides: "Except... as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts." In Marine Shale, supra, we held that the district court lacked jurisdiction of a suit challenging an order of the director of DEQ, and we implicitly recognized the legislature's power to control the jurisdiction of the appeal of such an agency determination.
Defendants assert that a finding of unconstitutionality in the instant case would be inconsistent with our holding in Marine Shale. However, the defendants have failed to note that the administrative agency determination in Marine Shale involved public rights. Contrarily, the quasi-judicial determinations which would result from OWC hearings involve private rights.
As early as 1932, in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), and as recently as 1982, in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the United States Supreme Court classified the worker's cause of action against his employer *935 for compensation as a private right. The worker's action is not a public right because the public-rights doctrine extends only to matters arising between the government and persons subject to governmental authority in connection with the performance of the constitutional functions of the executive or legislative departments. A minimum requirement for a matter to be classified as one of public rights is that a branch or agency of the government is an adversary in the dispute. On the federal level, Congress' power to create legislative courts to adjudicate public rights carries with it the lesser power to create administrative agencies for the same purpose and to provide for judicial review of those agency decisions in federal court. Northern Pipeline, 458 U.S. at 67-69, 102 S.Ct. at 2869-70. On the state level, the legislature's authority to create administrative agencies with quasi-judicial powers over public rights comes from its plenary powers.
In Crowell v. Benson, supra, a party to litigation involving a longshoreman's claim against his employer challenged the federal district court's authority to hold a trial de novo subsequent to a commissioner's hearing. The court held that Congress, possessed of the power to create an agency for the administration of the longshoreman's claim, nonetheless lacked the power to relegate the entire adjudication to the administrative level in lieu of the trial court level, subject only to appellate review, because the claim asserted was a private right, not a public right.
The Louisiana Legislature's power to provide a preliminary, pre-judicial administrative procedure for initiation of worker's compensation claims has been recognized in the courts. Bazley v. Tortorich, supra; Brock v. Schwegmann Giant Supermarkets, Inc., 520 So.2d 711 (La.1988). However, the distinctions between the previous OWC function and the OWC function outlined in the 1988 legislation are too obvious to merit mention. Suffice it to say that the legislature is powerless to change the nature of a worker's compensation claim from a private right to a public right.
Nor do we read Article V, Section 10(B) as a constitutional provision which has "otherwise authorized" the legislature to regulate the original jurisdiction of the district court. Section 10(B) provides solely for the courts of appeal; it has nothing to do with the jurisdiction of the district courts.

CONCLUSION
After considering the nature of worker's compensation law in this state and the history of Article V revealed by the recorded actions of the Constitutional Convention, we conclude that the legislature assumed powers prohibited to it when it enacted amendments to the Louisiana Worker's Compensation Law to remove compensation claims from the district courts. Considering the wording of Section 16(A), coupled with the well-documented intent of the Constitutional Convention not to permit the legislature to tamper with the jurisdiction of the district courts, we hold that the 1988 worker's compensation amendments violate Article V, Section 16(A).
In reaching this conclusion, we have found it unnecessary to decide whether judicial review of an administrative agency determination is an exercise of a district court's original jurisdiction or of its appellate jurisdiction.[9] Such a classification is superfluous because in either case the legislation under consideration today is unconstitutional; the 1988 legislation completely bypasses the district court.
For the foregoing reasons we reverse the judgment of the trial court which dismissed the plaintiff's suit, and we hold those provisions of Act 938 of 1988 which divest the district courts of original jurisdiction of worker's compensation claims unconstitutional.[10] *936 Defendants are to pay all costs of court, specifically $538.60 at the trial level and $349.77 on appeal.
REVERSED.
COVINGTON, C.J., dissents and assigns reasons.
COVINGTON, Chief Judge, dissenting:
This appeal questions the constitutionality of Act 938 of 1988, the new Worker's Compensation Law. Plaintiffs are two employees with pending compensation claims and an attorney who represents worker's compensation claimants. They filed a suit for declaratory and injunctive relief, claiming that Act 938 unconstitutionally divested the district courts of jurisdiction to hear worker's compensation cases, in addition to other constitutional defects.
The trial court found the Act to be constitutional and dismissed plaintiffs' suit. This devolutive appeal followed. The matter went to a five-judge panel and the majority reversed the trial judge, finding the Act to be unconstitutional. I dissent.

BACKGROUND
In 1988, the Legislature enacted a number of changes in the worker's compensation scheme, LSA-R.S. 23:1021 et seq., including the establishment of an administrative procedure for resolving disputed claims. A claim under this Act is commenced by filing a notice of injury with the director of the office of worker's compensation. If an issue cannot be resolved by the parties, either party may file a petition with the director, who assigns the matter to a hearing officer. That hearing officer conducts a hearing and receives all evidence, then renders a decision. Either party may appeal the decision to an appeals panel of three other hearing officers assigned by the director. Likewise, either party may appeal the decision of the appeals panel directly to the circuit court of appeal for the judicial district in which the claim was commenced. The district court is not involved in this procedure.[1] The effective date for this new administrative procedure was to be July 1, 1989, but was postponed until January 1, 1990, by Act 260 of 1989.

ISSUES AND ANALYSIS
Plaintiffs argue, as they did below, that a number of constitutional violations exist in the new scheme proposed by Act 938, requiring this court to declare the Act invalid. These alleged violations are as follows:
1. The Act divests the district courts of original jurisdiction of worker's compensation cases in violation of La. Const. Art. V, sec. 10.
2. The Act divests district courts of exclusive jurisdiction over cases involving the state and its political subdivisions as defendant in violation of Art. V, sec. 16.
3. The Act confers original jurisdiction on the courts of appeal in violation of Art. V, sec. 10.
4. The Act provides for executive appointment of judges called "hearing officers" in violation of Art. V, sec. 22.
5. The Act violates the separation of powers mandate of Art. V, sec. 1, and Art. II, sec. 2, by vesting judicial power in executive branch employees.
6. The Act violates equal protection and due process provisions of both the federal and state constitutions by denying compensation claimants the same access *937 to district courts enjoyed by employers and other administrative litigants.
In addition, plaintiffs contend that the Act is in irreconcilable conflict with the Administrative Procedure Act, which provides for district court review of administrative determinations.
My considerations begin in reverse order, with the last of plaintiffs' arguments first. Conflict Between Act 938 and the Administrative Procedure Act
The trial judge issued concise yet thorough reasons for judgment which contained an excellent analysis of many of the issues presented. On this point, he stated:
The fact that the Administrative Procedures [sic] Act provides for a differenct [sic] procedure than that adopted in the Worker's Compensation Act does not give rise to constitutional violations. The Administrative Procedure Act is general legislation and applies only in the absence of more specific legislation. Northing [sic] in the constitution or the Administrative Procedure Act requires the legislature to follow the procedures contained within that act in every instance.
This succinct summary of a long-settled rule of judicial construction is correct.
This argument by plaintiffs has no merit.
Equal Protection and Due Process Challenges
Plaintiffs contend that the Act violates the equal protection clauses of both the federal and state constitutions by denying them the same access to district courts that is enjoyed by other tort litigants and administrative claimants, and by employers under the Act. They also argue that access to the courts is a fundamental right, and that deprivation of this right is a denial of due process under both constitutions.
Previously this court has summarized the inquiry to be made in these types of constitutional issues. In Stuart v. City of Morgan City, 504 So.2d 934 (La.App. 1st Cir. 1987), we relied upon the discussion by our Supreme Court in Sibley v. Board of Supervisors of Louisiana State University, 462 So.2d 149, 155 and 157 (La.1985):
Equal protection and due process guarantees of the state and federal constitutions, however, protect only against the violation of individual rights by unreasonable statutory limitations. In the area of equal protection, a two-stage process of analysis is employed. Initially, a determination is necessary as to whether the subject Act disadvantages a `suspect class' or infringes upon a fundamental right. If so, a strict scrutiny analysis is required; if not, it is only necessary to determine whether the act rationally furthers some legitimate, articulated state purpose or goal. Bazley v. Tortorich, 397 So.2d 475, 483 (La.1981). We reaffirm, just as in Bazley, that a victim's right to sue in tort for full recovery for an injury is not a fundamental right. Classifications based on race, religion or political beliefs are, of course, absolutely prohibited, but other classifications are tested on a less rigorous basis, depending on the character of the classification involved and the strength of the state interest supporting the distinction. Hargrave, `Statutory' and `Hortatory' Provisions of the Louisiana Constitution of 1974, 43 La.L.Rev. 647, 670 (1983).
. . . . .
Similarly, an analysis of statutes for substantive due process reveals that cases involving economic and social welfare legislation are to be distinguished from cases involving fundamental civil rights. A statute enacted to limit liability on malpractice claims for state medical services cannot be classified as an infringement of a fundamental civil right. For legislation involving economic and social welfare interests, the test of substantive due process is whether the regulation is reasonable in relation to the goal sought to be attained and is adopted in the interest of the community as a whole.
In Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1107-1108 (La.1985), the Court defined equal protection under the Louisiana constitution as follows:

*938 Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment. [Footnotes omitted.]
504 So.2d at 940-941.
Whether the Act disadvantages a "suspect class" or infringes upon a fundamental right, has already been answered in the negative by our Supreme Court. An injured employee seeking worker's compensation is not a member of a suspect class, which must have as its basis race, alienage, national origin, or some other discrete and insular minority trait. See, Bazley v. Tortorich, 397 So.2d 475 (La. 1981). Nor is a fundamental right infringed upon by the Act's scheme. The Court in Bazley expressly distinguished the right to receive worker's compensation from those rights considered fundamental:
In a case merely involving general police power or social welfare legislation such as our workers' [sic] compensation statute, the test of substantive due process is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. [Citations deleted.]
397 So.2d at 483.
Thus, the next step in this analysis must be determining whether the Act is reasonable in relation to its goal and is in the interest of the State as a whole. Defendants argue that the new procedure for processing claims is more efficient and less burdensome than the former procedure. It is also arguably a much faster mechanism for resolving disputed claims. Deletion of the district courts in the chain of review would expedite the claims, thus being of benefit to the employee and to the employer. Societal interests dictate that the plight of the compensation claimant have a paramount place in the order of priorities set by government.
Minutes of the June 10, 1988, hearing of the House Committee on Labor and Industrial Relations provide insight into the legislative intent behind the Act's changes. A number of factors were objects of concern and discussed at the hearing as prompting the proposed changes. These factors included the high cost of worker's compensation as a cost of doing business; the desirability of delivering benefits to injured workers at a lesser cost and in less time; more uniformity in decisions by removing the claims from some 260 district court judges in the state and placing them in the hands of 9 hearing officers with backgrounds of expertise in labor law; and a desire to compare favorably with other states in the worker's compensation area, with an implied aim of attracting new business to the state. It was stated specifically that only four other states in the nation have a system in which the courts heard worker's compensation cases de novo.
While the merits and methods of the Act may be vehemently argued, I cannot say that its provisions are unreasonable in relation to its goal or that it is not in the interest of the state as a whole. Nor can I say that Act 938 does not suitably further an appropriate state interest.
This assignment of error is without merit.
Separation of Powers Questions
Under this category is grouped two of plaintiffs' arguments, as they are closely related. The first argument is that the Act vests judicial power in executive branch employees in violation of Article V, section *939 1 and Article II, section 2. The second argument is that the Act violates Article V, section 22 by providing for executive appointment of judges called "hearing officers."
Article V, section 1 provides, "The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." Article II, section 2 states, "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." Article V, section 22 requires that "all judges shall be elected," with the exception of those appointed to fill vacancies of six months or less.
In its reasons for judgment, the trial court succinctly addressed these contentions.
The worker's compensation office is an arm of the executive branch. The administrative hearing officers exercise administrative power. They do not exercise judicial power. The Act does not conflict with the separation of powers article of the constitution, La. Const. Art. 2, Sec. 1 and 2, nor with La. Const. Art. 5, Sec. 1, which vests judicial power in the judicial branch. Anderson v. State, [363 So.2d 728 (La.App. 2nd Cir. 1978) ]....
Administrative hearing officers are appointed officials of the executive branch. They are not judges. Article 5, Section 22, La. Const., which requires that judges be elected is not applicable to the executive branch. The Act does not conflict with that provision of the constitution.
I find no encroachment on judicial power in this Act, which provides for executive administration of a social welfare program, with review by the courts of appeal of the executive branch's decisions. Nothing in our constitution requires that such a scheme be achieved through the judicial machinery, other than to assure that the appropriate standards of due process and equal protection are met, and that the decisions are not arbitrary or unsupported by the records.[2] The provision that appeals may be taken from the appeals panel's decision to the appropriate court of appeal would achieve this goal, while also preserving the Legislature's goal of streamlining the process and reducing the delay inherent in disputed claims.
Both our state and federal executive branches of government are replete with agencies and commissions charged with administering various programs, some of which decide entitlement to certain benefits, some of which decide non-monetary matters. These executive branch entities are too numerous to mention. However, it has long been accepted that the grant of authority to these bodies does not usurp judicial authority, and is not a grant of judicial power to the executive branch.[3]
I find that there is no violation of Article V, section 1 or Article II, section 2 in Act 938. Necessarily, if there is no vesting of judicial power on executive branch employees, then plaintiffs' second argument regarding the executive appointment of "judges" also falls.
Original, Exclusive, and Appellate Jurisdiction
Plaintiffs' three remaining arguments are also closely related; therefore, I have grouped them together for this discussion: (1) the alleged divestiture of original jurisdiction from the district court, violating Article V, section 16; (2) the alleged divestiture of exclusive jurisdiction over cases involving the state and its political subdivisions as defendants, violating Article V, section 16; and (3) the alleged conferring *940 of original jurisdiction in the courts of appeal, prohibited by Article V, section 10.
Section 16(A) reads as follows:
(A) Original Jurisdiction. Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters. It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office or other public position; civil or political rights; probate and succession matters; the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships.
Section 10(A) provides:
(A) Jurisdiction. Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, (2) all matters appealed from family and juvenile courts, and (3) all criminal cases triable by a jury, except as provided in Section 5, Paragraph (D)(2) of this Article. It has supervisory jurisdiction over cases which arise within its circuit.
Inherent in plaintiffs' arguments is the premise that a claim for worker's compensation benefits is a "civil matter" or "case" mandated by the above provisions to be heard by district courts. Put in another way, plaintiffs assume that a claim for compensation benefits that is disputed comprises a civil cause of action. However, after a thorough consideration of this question, I must decline to accept this premise. In view of the changes wrought by the Legislature in Act 938 in the entire scheme of the worker's compensation, and the discussions of the purposes behind these changes in the hearings before the House Committee on Labor and Industrial Relations, it must be concluded that the legislature intended to eliminate a claim for worker's compensation benefits as a civil cause of action.
As stated previously, part of the discussion before the House Committee on Labor and Industrial Relations was the express intent of the bill's sponsors to remove compensation claims from the consideration of the more than 260 district court judges in the state. The basis for this change was stated to be a desire for greater consistency and expertise in compensation matters, and to align our state with the 45 other states which do not have trial court participation de novo in compensation claims. Such a removal of compensation claims from our district court can only mean an elimination of a cause of action, if there is no judicial trial de novo. A review by the court of appeal of the administrative decision on such a claim is preserved, but actual litigation or a trial de novo in district court is now precluded by the Act. The elimination as a civil cause of action of a claim for worker's compensation benefits, an area of social welfare legislation distinguished from any fundamental civil right, is within the power of the Legislature. See Bazley v. Tortorich, supra.
This action by the Legislature is more readily supportable when one considers the nature of the claim being made, which is distinguishable from other civil matters in significant ways. The nature of worker's compensation is unique, being based neither in tort nor contract. Instead of a controversy in which liability for a wrong is contested, the compensation program is actually a no-fault scheme for providing medical costs and some measure of living expenses to victims of work-connected injuries, assuming certain criteria are met by the victims. Liability, if any, has been stipulated in effect by the Legislature. Any dispute is limited to whether the criteria have been met and/or the amount of benefits to which a claimant may be entitled, matters uniquely suited to administrative determinations. The cost of these benefits is initially absorbed as a cost of production, and ultimately is borne by consumers or the community in general. That this production cost is viewed as a legitimate societal cost also signifies the importance of worker's compensation benefits as distinguishable from other types of claims, such as those in typical tort or contract claims. Few of the latter types of claims could be said to be as important to the *941 functioning of our modern society as a unified scheme for injured workers. While I certainly do not denigrate the importance of individual rights, which are the foundation of our nation, I must point out that the concept of the public welfare is a valid factor to consider in constitutional questions involving the police power of the State. It is also a distinguishing factor in this case, as compared to other types of cases involving other "civil matters."
While a claim for worker's compensation benefits is undeniably a "civil" matter as distinguished from a criminal one, it is not necessarily a justiciable controversy, nor must it comprise a cause of action. In St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165 (La.1987), our supreme court defined justiciable controversy as follows:
A "justiciable controversy" connotes an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interest, and upon which the judgment of the court may effectively operate through a decree of conclusive character.
As previously noted, since the Legislature has in effect stipulated liability and provided a no-fault scheme of benefits, there is no actual and substantial dispute or real adverse interests between the parties. The only questions to be answered are whether the claimant meets the criteria and the amount of benefits that may be due.
In Hope v. Madison, 192 La. 593, 188 So. 711 (1939), "cause of action" was defined as follows:
A cause of action is an act on the part of a defendant which gives rise to a plaintiff's cause of complaint; `the existence of those facts which give a party a right to judicial interference in his behalf'; `the situation or state of facts which entitles a party to sustain an action'.
'When used with reference to the pleadings by which the cause of action is alleged, the phrase signifies the facts upon which the plaintiff's right to sue is based, and upon which the defendant's duty has arisen, coupled with the facts which constitute the latter's wrong.' Quotations from 2 Words & Phrases, First Series, Cause of Action, p. 1017. [Emphasis added.]
This definition was more recently cited with approval by the Supreme Court in Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350, 353 (La. 1975), which further stated: "The cause of action is the state of facts which gives a party a right to judicially assert an action against the defendant." [Emphasis added.]
The comprehensive scheme proposed by Act 938 eliminates the rationale and the need to "judicially assert an action," while also expressly eliminating the right, and while providing an alternate system which is not totally arbitrary.
In this very limited scenario, therefore, the Legislature may limit access to the courts or allocate access to the judicial machinery on any system or classification which is not totally arbitrary. Bazley, supra, at 397 So.2d 485, and the cases cited therein. As both the state and federal jurisprudence indicates, various constitutional guarantees, such as due process, equal protection, and access to the courts, protect fundamental interests to a greater extent than interests not considered of fundamental constitutional importance. See Everett v. Goldman, 359 So.2d 1256 at p. 1268, and the authorities cited therein.
In this instance, this same principle of limitation may be applied to those provisions of our constitution which plaintiffs urge require district court participation in compensation claim disputes. Where the right asserted by a claimant is not subject to special constitutional protection as a fundamental right, such that the Legislature may abolish same as a cause of action, those constitutional requirements dealing with causes of action in our courts may not apply. Thus, plaintiffs' arguments concerning the mandatory jurisdiction of district courts for worker's compensation claims have no merit.
My position in this case is limited to the facts and factors herein. Contrary to plaintiffs' arguments, I do not believe that *942 the Legislature is entitled to create an infinite number of executive bodies to decide an infinite number of questions currently addressed in our court system. I would merely uphold the validity of the Legislature's attempt to resolve the "difficult economic and social problems presented by workers' [sic] compensation programs," Bazley, 397 So.2d at 484.
NOTES
[1] We note that a subsequent amendment in 1989 abolishes the appeals panel and provides for appeals to the circuit courts of appeal directly from the decision of the hearing officers. Act 454, Section 9 of 1989, effective January 1, 1990; LSA-R.S. 23:1310.5(A)(2). The effective date of Act 938 of 1988 was to be July 1, 1989, but it was postponed until January 1, 1990, by Act 260 of 1989.
[2] Forecasting the possibility that the procedural changes wrought by the new act would be declared unconstitutional, the legislature passed Act 23 of 1989, which is a failsafe re-enactment of the former administrative provisions.
[3] La.St.L.Inst. Projet of a Constitution for the State of Louisiana (1954).
[4] Professor Lee Hargrave, Louisiana State University, was the coordinator of legal research for the Constitutional Convention of 1973; he conducted research for the Judiciary Committee.
[5] But see In re Investigation of Smith, 546 So.2d 561 (La.App. 1st Cir.), writ denied, 550 So.2d 636 (La. 1989), wherein this court held that the constitutional provisions delegating judicial authority to the Civil Service Commission are to be narrowly construed because they are exceptions to Article 16 jurisdiction of the district courts over all civil matters. Accord, In re Investigation of Lauricella, 546 So.2d 207 (La.App. 1st Cir.), writ denied, 548 So.2d 330 (La. 1989).
[6] But compare, City of New Orleans v. United Gas Pipe Line Co., 438 So.2d 264 (La.App. 4th Cir.), writ denied, 442 So.2d 463 (La.1983). The case illustrates the principle that an administrative agency, even one that enjoys the elevated status of being a creature of the constitution, cannot overstep the boundaries of its function. Dismissing the Louisiana Public Service Commission's petition of intervention in a suit to recover overpayments of utility charges, the court labeled the distribution of damages to individual customers as a "judicial function" protected by Article V, Section 1.
[7] Furthermore, we reach an impasse regarding exclusive original jurisdiction and concurrent jurisdiction if we attempt to find legislative power to divest the district courts of jurisdiction in Article V, Section 16(B): "A district court shall have appellate jurisdiction as provided by law." Although this section gives the legislature the power to enact statutes to regulate the appellate jurisdiction of the district courts, and arguably to withhold appellate jurisdiction from the district courts entirely, the section cannot qualify under the "as otherwise authorized" proviso of Section 16(A). If we were to read Section 16(B) in this manner, we would condone an anomaly: the legislature could create concurrent jurisdiction in the OWC and the district court for cases against non-governmental employers, but the exclusive original jurisdiction over the state as a defendant, which is unaffected by the "as otherwise authorized" proviso, would bar the OWC from exercising jurisdiction over governmental employers. Judicial efficiency, as well as a serious question of lack of equal protection, militates against such a dichotomous result.
[8] We have no quarrel with the proposition that the legislature has the power to eliminate worker's compensation claims entirely. "The constitutions of the United States and this state impose no obligation on the legislature to provide injured employees with a particular kind of remedy for loss of income and medical expenses. But when a legislature acts to alleviate some of the suffering and hardships of industrial accidents, the manner in which it provides for relief is subject to constitutional limitations." Bazley v. Tortorich, supra, at 482, 483.
[9] See, Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971); Loop, Inc. v. Collector of Revenue, 523 So.2d 201 (La.1988); Tanner v. City of Baton Rouge, 422 So.2d 1263 (La.App. 1st Cir. 1982), writ denied, 429 So.2d 128 (La.1983); and Anderson v. State, 363 So.2d 728 (La.App. 2nd Cir.), writ denied, 364 So.2d 600 (La.1978).
[10] Although Act 938 of 1988 contains numerous changes to the Louisiana Worker's Compensation Law, this appeal involves only those sections which were amended to establish the procedure for hearing officers within the OWC. Consequently, our decision today strikes down only the pertinent sections before us. Furthermore, since the legislature made known its wishes (see Footnote 2, supra) concerning the procedure the OWC should follow in event the 1988 amendments did not survive constitutional challenge, it is unnecessary for us to discuss severability of the sections that are affected by this opinion. See Cross v. Alexander, 498 So.2d 740 (La. 1986).
[1] Acts 1989, No. 26 further streamlined the procedure by providing for direct appeal to the court of appeal from the decision of the hearing officer. The appeals panel of three hearing officers was deleted from the process. This appeal does not consider Act 26.
[2] Although the chain of appeal provided by Act 938 does differ from the Administrative Procedure Act, in other respects the Act requires compliance with the APA [see § 23:1310.1(c) ]. The standard of review by the courts of appeal for decisions on compensation claims will therefore be the same as for other administrative agency determinations.
[3] For an example of a case in which the United States Supreme Court has upheld a statutory preclusion of judicial review of administrative action, see Block v. Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). But note that Act 938 does provide for judicial review by the courts of appeal.