580 So.2d 392 (1991)
In the Matter of AMERICAN WASTE AND POLLUTION CONTROL COMPANY.
In the Matter of CHEMICAL WASTE MANAGEMENT, INC., LAKE CHARLES.
CHEMICAL WASTE MANAGEMENT, INC.
v.
STATE of Louisiana, DEPARTMENT OF ENVIRONMENTAL QUALITY.
In the Matter of DRAVO BASIC MATRIALS COMPANY, INC., Pontchartrain Materials Corporation and Louisiana Materials Company.
Nos. CA 89 0906, CA 90 0516, 90 0724 and CA 90 1525.
Court of Appeal of Louisiana, First Circuit.
March 11, 1991.
Dissenting Opinions March 15, 1991.
*393 Gerald L. Walter, Jr., and James C. Percy, Schwab & Walter, Baton Rouge, for appellant American Waste and Pollution Control Co.
Paula J. Lawrence, and Roland T. Huson, III, Baton Rouge, for appellee Dept. of Environmental Quality.
J. Arthur Smith, Baton Rouge, for intervenors Marc Oray, Dr. Robert Rush, Inglewood Land and Development Corp. and Rio Rouge Development Corp.
John N. Kennedy, Office of the Governor, Baton Rouge, for Governor.
Gerald L. Walter, Jr., Schwab & Walter, Anne J. Crochet, Baton Rouge, for appellant Chemical Waste Management, Inc.
Raeford Craig Lackey, Ann C. Coco, Gordon Green and John B. King, Dept. of Environmental Quality, Office of Legal Affairs and Enforcement, Baton Rouge, for appellee State of La., Dept. of Environmental Quality.
Marvin Harger and Michael Tritico, Lake Charles, for C.L.E.A.N. Gernine M. Mailhes, Lake Charles, for Calcasieu Parish Police Jury.
James A. Burton, J. Thomas Hamrick, Jr. and Susan F. Clade, Simon, Peragine, Smith & Redfearn, New Orleans, for appellant Dravo Basic Materials Co., Inc.
John R. Peters, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellant Pontchartrain Materials Corp.
Robin B. Durant, in pro per. Louisiana Materials Co., Inc.
Ian Douglas Lindsey, Asst. Atty. Gen., Baton Rouge, for intervenor State of La. through the Dept. of Justice.
Michael Osborne and Christopher Gobert, Osborne & McComiskey, New Orleans, for intervenor Save Our Coast.
Michael D. Conroy, Metairie, for intervenor Lake Pontchartrain Basin Foundation.
Before COVINGTON, C.J., and LOTTINGER, EDWARDS, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN, LEBLANC, FOIL and GONZALES, JJ.
COVINGTON, Chief Judge.
These appeals from the Department of Environmental Quality (DEQ) and from the district court[1] involve diverse factual and legal issues. They were consolidated for the purpose of addressing the sole question of whether the procedure for appeal of decisions by the DEQ established in LSA-R.S. 30:2024 is constitutional, following the decision by the Louisiana Supreme Court in Moore v. Roemer, 567 So.2d 75 (La.1990). The Moore case held that the legislature was without authority to divest district court of jurisdiction over worker's compensation claims in Act 938 of 1988, because of the constraints of La. Const. art. V, § 16. Following the rationale of Moore v. Roemer, we hold that LSA-R.S. 30:2024 is unconstitutional as violative of La. Const. art. V, § 16.

SUMMARY OF MOORE v. ROEMER
A brief review of the background and holding of Moore is essential to understanding its implications and effect on the cases at bar. Moore arose in the context of worker's compensation claims.
From 1914, when the Legislature first created a worker's compensation scheme, until 1983, an employee was required to initiate a claim for compensation benefits by bringing a civil suit against his employer in district court. In 1983, the Legislature created the Office of Worker's Compensation Administration (OWCA), and required employees to initiate their claims for *394 compensation benefits by filing them initially with the director of the OWCA. The director then issued an advisory recommendation, which could be rejected by any party; the employee thereafter had the right to file a civil suit in the district court.
In 1988, the Legislature enacted Act 938, which basically removed worker's compensation disputes from district courts. It vested "exclusive original jurisdiction" to adjudicate these claims in administrative hearing officers. Appeals from their decisions went to an appeals panel[2] within the OWCA, and from these panels directly to the courts of appeal. The role of the district courts was thus eliminated entirely.
Act 938 was challenged in district court and its constitutionality upheld. However, on appeal before this court, a majority of a five-judge panel reversed and found Act 938 was in violation of La. Const. art. V, § 16(A) which vests district courts with original jurisdiction of all civil matters except as otherwise authorized by the constitution. Since there was no constitutional authorization to treat worker's compensation differently, the Legislature's act was held unconstitutional.
The Supreme Court affirmed that decision, likewise finding that the Act violated Article 5, Section 16's grant of original jurisdiction to district courts. Justice Lemmon, writing for the court, discussed the meaning of original jurisdiction as follows:
Original jurisdiction refers to jurisdiction in the first instance. The term designates the adjudicative tribunal in which the initial adjudication is made. When the original jurisdiction allocated to the various courts is circumscribed by the Louisiana Constitution, the Legislature may not alter such jurisdiction by statute.
. . . . .
The language of La. Const. art. V, § 16 makes it evident that the drafters of the 1974 constitution intended to vest the district court with at least concurrent original jurisdiction to adjudicate all legal matters, both civil and criminal, except for those matters in which original jurisdiction is "otherwise authorized" by the constitution itself in other courts or in other adjudicate tribunals. La. Const. art. V, § 16(A) uses the term "civil" in direct contrast to "criminal" matters. This terminology indicates an intent by the drafters to include all matters not criminal in nature as "civil matters" under the district court's original jurisdiction. Nothing in the constitution suggests any intent that a separate category of innominate matters should be excluded from these all-inclusive terms.
The constitution's explicit statement that original jurisdiction over all civil and criminal matters is to be in the district courts "unless otherwise authorized by the constitution", along with express authorization elsewhere in the constitution for original jurisdiction in administrative bodies such as the Civil Service Commission and Public Service Commission, further indicates that matters under the original jurisdiction of administrative bodies are civil matters which would otherwise come under the original jurisdiction of the district court.

[Citations and footnotes deleted; emphasis added.] 567 So.2d at p. 79.
In the face of such strong language on the all-inclusive nature of the district court's original jurisdiction, challenges to the direct appeal of DEQ decisions to the Court of Appeal have been raised using some of the same arguments on the exclusion of district courts. Respondents have pointed out the DEQ appeals, like worker's compensation appeals, are not "otherwise authorized" by the constitution in other adjudicate tribunals in the way that Civil Service Commission and Public Service Commission appeals are. Therefore, they argue, LSA-R.S. 30:2024 violates La. Const. art. V, § 16 and its grant of original jurisdiction to the district courts.

*395 STATUTORY HISTORY
A brief review of the history of the pertinent environmental law regulations is also helpful to an understanding of the issues presented herein. Title 30, Revised Statutes of 1950, entitled "Minerals, Oil, and Gas," was amended by La. Acts 1978, No. 334, § 1, to add Chapter 11, entitled "Environmental Affairs" and containing "Part I. Hazardous Waste Control," with sections numbered 1101-1116. Thereafter, Chapter 11 was amended by Acts 1979, No. 449, § 1, to reenact the provisions therein to include sections 1051-1147. LSA-R.S. 30:1072 (the precursor of Section 2024) was first added by this Act, and at that time read as follows:
Any order or any suspension or revocation of a permit, license, or variance issued by the assistant secretary shall become final, unless, no later than thirty days after the order or notice of the suspension or revocation is served, the person or persons named therein request a public hearing. Upon such request, the commission shall promptly conduct a public hearing.[3] [Emphasis added.]
Acts 1982, No. 322, § 1, rewrote the statute to provide for the first time a direct review by the court of appeal, as follows:
A. Any enforcement or permit action taken by the assistant secretary shall be effective upon issuance. Such action shall be final and not subject to further review unless, no later than thirty days after the notice of the action is served by certified mail upon the respondent, he files with the assistant secretary a request for hearing before the commission. Upon timely filing of the request, the assistant secretary shall either grant the relief requested or forward the request to the commission. The commission shall adopt rules governing such appeals.
B. Any person aggrieved by a final decision or order of the commission may appeal therefrom to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the commission within thirty days after the final decision or order is served upon the respondent. Any preliminary, procedural, or intermediate ruling or decision by the commission is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit shall promulgate rules of procedure to be followed in taking and lodging such appeals. The provisions of R.S. 49:962 and 964 shall not apply to decisions and orders of the commission. [Emphasis added.]
This statute has been amended subsequently, by Acts 1983, No. 97, § 1, Acts 1984, No. 795, § 1, and Acts 1984, No. 825, § 1. The last of these Acts produced the text as it appears in LSA-R.S. 30:2024. Pursuant to House Concurrent Resolution No. 247, of the 1987 Regular Session, the heading of Title 30 was expanded to "Minerals, Oil, and Gas and Environmental Quality." Chapter 11 was redesignated "Subtitle II. Environmental Quality," and LSA-R.S. 30:1072 was renumbered as LSA-R.S. 30:2024.
The specific statutory evolution of Section 2024 also becomes more meaningful when it is considered against the broader background and development of legislation regulating the environment in general.
Prior to Acts 1979, No. 449, environmental protection and regulation statutes were scattered throughout the revised statutes and enforced by a number of state agencies and offices within the executive branch of this state. Titles 33, 36, 40, 51, and 56 all contained provisions for various state entities to regulate a number of different environmental concerns. These entities included the Stream Control Commission, the Louisiana Air Control Commission, the Department of Health and Human Resources, the Department of Wildlife and Fisheries, and the Department of Natural Resources, among others.
*396 Acts 1979, No. 449 expressly purported in its title "to provide for the merger and consolidation of the functions of the state relating to protection of the environment, to create and provide with respect to the Environmental Control Commission and the office of environmental affairs of the Department of Natural Resources and their powers, duties, functions, and responsibilities...." To this end, it transferred a number of agencies to the Department of Natural Resources, and created the office of environmental affairs and the Environmental Control Commission. It also abolished various other agencies and granted to DNR their authority and responsibilities.
This action by the legislature was taken not only in response to a perceived need for environmental protection by the legislature but also in response to the declaration of policy in the Natural Resources article, La. Const. art. IX, § 1, which provides:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy. [Emphasis added.]
Subsequently, Acts 1983, No. 97,[4] consolidated two totally diverse cabinet departments, the Department of Public Safety and the Department of Corrections, into one, the Department of Public Safety and Corrections, in order to provide an additional cabinet level position. This action was necessitated because of the provision in the La. Const. art. IV, § 1(B) for only twenty cabinet level departments, which were already in existence. It also created the Department of Environmental Quality (DEQ), and transferred to DEQ other agencies charged with environmental regulation, including the Environmental Control Commission.
It should be emphasized that at the time of the enactment of the 1974 Constitution and at the time Act 449 was passed, appeals from these various agencies charged with environmental regulation were taken to the district court. For example, under former LSA-R.S. 33:7559, appeals from decisions of the board of commissioners of the various environmental protection districts were specifically taken to district court. Likewise, under former LSA-R.S. 40:2207, appeals from the Air Pollution Control Board were to be taken to the district court by filing a petition for a declaratory judgment. Decisions by the State Health Officer, Office of Public Health, and Industrial Waste Disposal Board were appealed to district court by invocation of the Louisiana Administrative Procedure Act in former LSA-R.S. 40:4.
Not until 1982, in Act 322, did the legislature make any attempt to change the method of appealing decisions by any environmental agency by directing them to the court of appeal.
Under the current statutory scheme, persons aggrieved by a final decision or order of the secretary appeal to the First Circuit Court of Appeal under Section 2024. However, civil suits instituted by the DEQ, under Section 2025, as well as suits instituted by interested persons, under Section 2026, are brought in the district court. Acts 1990, No. 197, Section 1, recently amended Section 2024(A) to provide that upon denial of a request for an adjudicatory hearing, a respondent may file an application for a de novo review of the secretary's action in the Nineteenth Judicial District Court, while at the same time preserving the procedure for direct appeal of a final decision by the secretary to the court of appeal. Since all appeals consolidated herein were perfected prior to the effective date of Act 197, we expressly do not consider this latest amendment to Section 2024.[5]

*397 CONSTITUTIONAL ARGUMENTS
The burden upon a party challenging the constitutionality of a statute was restated recently in the Moore case by the supreme court:
Because the Legislature is entitled to exercise any power not specifically denied by the constitution, a party questioning the constitutionality of an act must point to a specific provision of the constitution which clearly prohibits the legislative action. Board of Directors of the Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of Louisiana, 529 So.2d 384 (La. 1988); Board of Commissioners v. Department of Natural Resources, 496 So.2d 281 (La. 1986); Swift v. State, 342 So.2d 191 (La.1977); Ancor v. Belden Concrete Products, Inc., 256 So.2d 122 (La. 1971). When a court can reasonably do so, it must construe a statute so as to preserve its constitutionality. State v. Newton, 328 So.2d 110 (La.1976).
567 So.2d at p. 78.
The provision of the constitution upon which this challenge is based is La. Const. art. V, § 16(A). Two of the respondents (not all of whom espouse the same position on this issue) assert that review of administrative decisions is an exercise of the district court's exclusive original jurisdiction, which may not be legislatively directed to the Court of Appeal or elsewhere in violation of La. Const. art. V, § 16(A). Additionally, in CA 90 0724, the respondent argues that exclusive original jurisdiction of cases involving the state as a defendant is vested in district courts under § 16(A).
DEQ advances several arguments or corollaries of an argument. First it claims that judicial review of agency determinations is an exercise of appellate jurisdiction which the legislature has the authority to divest from the district courts under La. Const. art. V, § 16(B). Additionally, it argues that under La. Const. art. IX, § 1, DEQ has been empowered by the legislature as a court and exercises original jurisdiction because of that article's mandate to the legislature to enact laws to protect the state's natural resources. In effect, then, the legislature has conferred a special status on DEQ, entitling it to by-pass district courts, and the legislature takes its authority to do so from the wording of Article IX.
In considering these arguments, we turn not only to La. Const. art. V, § 16 and art. IX, § 1, but to the entire structure of the judiciary as set forth in La. Const. art. V.

I. Constitutional Structure of the Judiciary Article
The 1974 constitution establishes a four-tiered system of courts in Article V. Section 1 of this article states that "[t]he judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." [Emphasis added.] Section 3 then sets out the composition of the Supreme Court; Section 8 concerns the courts of appeal; and Section 14 relates to the district courts, all as follows:
*398 § 3. Supreme Court; Composition; Judgments; Terms
Section 3. The supreme court shall be composed of a chief justice and six associate justices, four of whom must concur to render judgment. The term of a supreme court judge shall be ten years.
§ 8. Courts of Appeal; Circuits; Panels; Judgments; Terms
Section 8. (A) Circuits; Panels. The state shall be divided into at least four circuits, with one court of appeal in each. Each court shall sit in panels of at least three judges selected according to rules adopted by the court.
(B) Judgments. A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment.
(C) Terms. The term of a court of appeal judge shall be ten years.
§ 14. District Courts; Judicial Districts
Section 14. The state shall be divided into judicial districts, each composed of at least one parish and served by at least one district judge.
The fourth tier, or "other courts authorized by this Article" referred to in Section 1, are the trial courts of limited jurisdiction contained in Section 15(A), as follows:
Section 15. (A) Court Retention; Trial Courts of Limited Jurisdiction. The district, family, juvenile, parish, city, and magistrate courts existing on the effective date of this constitution are retained. Subject to the limitations in Sections 16 and 21 of this Article, the legislature by law may abolish or merge trial courts of limited or specialized jurisdiction. The legislature by law may establish trial courts of limited jurisdiction with parishwide territorial jurisdiction and subject matter jurisdiction which shall be uniform throughout the state. The office of city marshal is continued until the city court he serves is abolished.
It is obvious from a reading of these sections that DEQ cannot exercise judicial power because judicial power is vested in the courts, and DEQ is not a court within the meaning of Sections 3, 8, or 14. It cannot be a trial court of limited jurisdiction under Section 15, because that constitutional provision limits the power of the legislature to establish new trial courts to those "with parishwide territorial jurisdiction..." DEQ, as established by Acts 1983, No. 97, has statewide territorial jurisdiction. Therefore, DEQ is not a court.

II. The Effect of the Natural Resources Article
DEQ argues that it may by-pass the district courts under the terms of La. Const. art. IX, § 1. However, the precise language of this provision merely states an overall policy with regard to environmental matters, not a specific legislative directive to circumvent Article V:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
The discussion during the Constitutional Convention concerning this provision reveals no intent to expand legislative authority to establish an agency with judicial power. In fact, the discussion of this provision prior to passage was minimal, and reveals that its source was a policy statement in the 1921 Constitution in the Wildlife and Fisheries article [Article 6, § 1] that was merely expanded to include all of the natural resources of the state. Moreover, in response to a specific question about expansion of legislative authority, the assurance was given that "probably we're not granting the legislature any more authority than they presently have. We're certainly not restricting them in that area, though." Records of the Louisiana Constitutional *399 Convention of 1973: Convention Transcripts, 103rd Day's Proceedings, December 18, 1973, Volume IX, p. 2913.
Constitutional provisions are to be construed and interpreted by the same rules as are other laws. Aguillard v. Treen, 440 So.2d 704 (La.1983). Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. Comparison of La. Const. art. IX, § 1, with those other provisions in which exceptions are made for review of agency decisions reveals an obvious difference in phrasing.
La. Const. art. 10, § 12, provides for direct appeal from a decision of the State Civil Service Commission (or a municipal civil service commission) to the courts of appeal  the same result sought to be achieved by DEQ. However, this provision plainly states, in pertinent part, "The final decision of the commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located...."
Likewise, La. Const. art. IV, § 21, provides for appeal of decisions from the Public Service Commission, which go first to district court, and then directly to the Supreme Court. It reads, in pertinent part, "A right of direct appeal from any judgment of the district court shall be allowed to the supreme court."
La. Const. art. X, § 21 mandates that the legislature enact a code of ethics for public officials and employees, and requires administration by and creation of one or more boards. Decisions of such a board are to be appealable as directed by the legislature.[6] This provisions reads, in pertinent part, "Decisions of a board shall be appealable, and the legislature shall provide the method of appeal." [Emphasis added.]
Finally, in response to Moore v. Roemer the legislature passed Acts 1990, No. 1098. This Act proposed amendments to La. Const. of 1974, art. V, §§ 10(A) and (B) and 16(A), which amendments were adopted by a vote of the people on October 6, 1990.
These amendments concern the appellate jurisdiction of the courts of appeal and the original jurisdiction of the district courts and provide as follows:
§ 10. Courts of Appeal; Jurisdiction
Section 10. (A) Jurisdiction. Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, including direct review of administrative agency determinations in worker's compensation matters as heretofore or hereafter provided by law, (2) all matters appealed from family and juvenile courts, and (3) all criminal cases triable by a jury, except as provided in Section 5, Paragraph (D)(2) of this Article. It has supervisory jurisdiction over cases which arise within its circuit.
(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts. In the review of an administrative agency determination in a worker's compensation matter, a court of appeal may render judgment as provided by law, or, in the interest of justice, remand the matter to the administrative agency for further proceedings. In criminal cases its appellate jurisdiction extends only to questions of law.
. . . . .
§ 16. District Courts; Jurisdiction
Section 16. (A) Original Jurisdiction. (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters. (2) It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office or other public position; civil or political rights; probate and succession *400 matters; except for administrative agency determinations provided for in (1) above, the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships. [Emphasis added.]
. . . . .
In all of these instances, when exception was made to the normal method of appeal for an executive agency decision  that is, to the district court, then a court of appeal, then the supreme court  the language of the pertinent constitutional provision plainly and unambiguously stated so.
By contrast, the language of La. Const. art. IX, § 1, does not convey the same plain and unambiguous meaning. While this court may agree with DEQ that the policy expressed in the Natural Resources article is of crucial interest to the health and welfare of the citizens of this state, we may not circumvent constitutional restrictions in order to give effect to that policy. Nor may the legislature ignore constitutional restraints, specifically, those of La. Const. art. V, § 16.

III. Distinction between Original and Appellate Jurisdiction
DEQ's assertion that the review of agency determinations by an appellate court is an exercise of appellate jurisdiction rather than original jurisdiction is in direct conflict with La. Const. art. V, § 16, as that provision was construed by the supreme court in Moore v. Roemer, supra. Section 16 provides as follows:
§ 16. District Courts; Jurisdiction
Section 16. (A) Original Jurisdiction. Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters. It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office and other public position; civil or political rights; probate and succession matters; the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships.
(B) Appellate Jurisdiction. A district court shall have appellate jurisdiction as provided by law.
The pertinent language in Moore, which was quoted supra, merits repetition:
The constitution's explicit statement that original jurisdiction over all civil and criminal matters is to be in the district courts "unless otherwise authorized by the constitution", along with express authorization elsewhere in the constitution for original jurisdiction in administrative bodies such as the Civil Service Commission and Public Service Commission, further indicates that matters under the original jurisdiction of administrative bodies are civil matters which would otherwise come under the original jurisdiction of the district court. Another manifestation of the drafters' intent to categorize legal matters as civil and criminal is the fact that the constitution vests in the Supreme Court the authority to review questions of both law and facts in civil cases, but limits review authority in criminal matters to questions of law. La. Const. art. V, §§ 5(C) and 10(B). These provisions encompass all matters, including those which come to the court through administrative agencies.

[Citations and footnotes deleted; emphasis original; underscoring added.] 567 So.2d at pp. 79-80.
Conversely, pursuant to La. Const. art. V, § 10(A) Courts of Appeal have appellate and supervisory jurisdiction; they do not have original jurisdiction. Thus, the supreme court apparently reasoned that unless administrative bodies had express constitutional authorization, such as in the case of the Civil Service Commission (La. Const. art. 10, § 12) and the Public Service Commission (La. Const. art. IV, § 21), original jurisdiction in matters involving administrative agencies for review of agency determinations is vested with the district *401 court.[7] As noted supra, appeals from both the Civil Service Commission and Public Service Commission are expressly provided for in the constitution, in contrast to appeals from other agency determinations. The inescapable conclusion is that DEQ, which does not have express constitutional authorization to exercise original jurisdiction like the Civil Service Commission and the Public Service Commission, does not have original jurisdiction. Correspondingly, since there is no constitutional provision for appeals from DEQ to by-pass district court, these appeals are "civil matters which ... come under the original jurisdiction of the district court."
At this point, it is crucial to note that original jurisdiction encompasses both trial de novo and judicial review of a record; the two are not synonymous. The distinction is an important one in view of concerns that requiring the district court to handle DEQ appeals would result in its "entering the permit business," as well as concerns about the continued viability of judicial review under the Louisiana Administrative Procedure Act (LAPA).
The supreme court discussed the distinction between judicial review of agency decisions on the record and trial de novo in Buras v. Board of Trustees of Police Pension Fund of City of New Orleans, 367 So.2d 849 (La.1979). Justice Marcus, writing for the court, set out the procedure for review under the LAPA, and stated:
These provisions defining the nature and scope of judicial review under the Administrative Procedure Act do not authorize a trial de novo in the reviewing court. To the contrary, it is clear that the review "shall be confined to the record" as established before the agency. If the reviewing court were allowed to hear such matters de novo and substitute its judgment for that of the administrative agency, it would be usurping the power delegated by the legislature to the administrative agency. It should also be noted that the Administrative Procedure Act, properly complied with, operates to the advantage of both the parties and the courts. It enables the parties to resolve their disputes in a less cumbersome and expensive manner than normally encountered at a trial in court. At the same time, the courts are relieved of the time-consuming task of hearing the evidence. It further permits the administrative agency to weigh and evaluate the evidence with proper respect being given to its expertise in the matter. Additionally, it promotes the uniform application of the statute under which the agency operates.
367 So.2d at p. 853.
This court, citing the Buras case, also discussed the distinction between the two in Pardue v. Stephens, 558 So.2d 1149, 1159-60 (La.App. 1st Cir.1989). This court has stated "The remedy of a trial de novo is a separate (or additional) remedy from a review of the record under the LAPA," and cited the many statutes providing for judicial review by a trial de novo, as contrasted to a review of the record under the LAPA. See, 558 So.2d at 1159.
By contrast, other statutes provide clearly for judicial review of agency decisions on the record, and not trial de novo: LSA-R.S. 23:1634 (decisions on claims for benefits from the Office of Employment Security); LSA-R.S. 30:12 (orders of the Commissioner of Conservation); and LSA-R.S. 47:1434 (decisions of the Board of Tax Appeals).
Thus, arguments that this court would be opening a Pandora's box by requiring DEQ appeals to be heard in district court are meritless. The district court may exercise its grant of original jurisdiction under La. Const. art. V, § 16 by conducting a review of the administrative record of DEQ, without "intruding into the permit business," or conducting a trial de novo. (In the absence of a special statute, it could not conduct a trial de novo anyway.)
Finally, with regard to the arguments on original jurisdiction, attention must be focused *402 on the second sentence of Section 16(A), which grants to district courts "exclusive original jurisdiction of felony cases and of cases involving ... the state, a political corporation, or political subdivisions, or a succession, as a defendant...." There can be no dispute that in cases such as these, the DEQ is both the regulatory authority and adversary. Whether named as such or not, DEQ functions as a defendant in cases under judicial review. Thus, LSA-R.S. 30:2024 contravenes the more specific sentence of Section 16(A), as well as the first sentence with its broad general grant of original jurisdiction to the district court.
Original jurisdiction can not be conferred legislatively in contravention of the constitution. Therefore, we conclude that insofar as LSA-R.S. 30:2024 circumvents the constitutional grant of original jurisdiction of all civil matters and of exclusive original jurisdiction of cases involving the state as a defendant to the district court, it is unconstitutional.

PUBLIC RIGHTS DOCTRINE
It has been suggested that in areas involving "public rights," the legislature may substitute quasi-judicial administrative hearing procedures in lieu of the original jurisdiction otherwise vested in the district court. Whether the public rights doctrine has any application under the Louisiana Constitution is a question which is res nova in this state.
With the exception of the worker's compensation scheme[8] struck down in Moore v. Roemer, and that of the DEQ discussed herein, there is no other statutory provision allowing appeal from an executive department or agency decision directly to a court of appeal.[9] The Louisiana Supreme Court *403 left the question open in Moore v. Roemer. Without deciding the issue, the court in Moore held that a worker's compensation action is not a matter of public law, but rather a matter of private law.[10] Although this court in its appellate consideration of the Moore case impliedly recognized the existence of the doctrine in Louisiana (See, 560 So.2d 927, 934 (1990)), we take the opportunity now to reconsider that position.
"The public rights doctrine is grounded in a historically recognized distinction between matters that could be conclusively determined by the Executive and Legislative Branches and matters that are `inherently... judicial.'" Northern Pipeline Construction Co. v. Marathon Pipe Line Company, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), 102 S.Ct. at 2870, quoting Ex parte Bakelite Corp., 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929). It is a federal jurisprudential doctrine which enabled Congress to create "legislative" courts and administrative agencies to adjudicate cases, outside of the directives of Article III of the United States Constitution. Article III provides, in pertinent part, as follows:
Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their continuance in Office.
Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and treaties made, or which shall be made, under their Authority;  to all Cases affecting Ambassadors, other public Ministers and Consuls;  to all Cases of admiralty and maritime Jurisdiction;  to Controversies to which the United States shall be a Party;  to Controversies between two or more States;  between Citizens of different States;  between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.
In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.
The trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.
As was stated by the United States Supreme Court in Northern Pipeline, "The inexorable command of this provision [Article III] is clear and definite: The judicial *404 power of the United States must be exercised by courts having the attributes prescribed in Art. III." 458 U.S. at 60, 102 S.Ct. at 2865, 73 L.Ed.2d at 608.
The litigation in Northern Pipeline arose following the Congressional enactment of the Bankruptcy Act of 1978 (Act), providing for bankruptcy courts in each federal judicial district, and which provided for the appointment of bankruptcy court judges for 14-year terms, subject to removal by the judicial council of the circuit in which they served on grounds of incompetence, misconduct, neglect of duty, or disability. In response to a suit for alleged breach of contract and warranty filed by a plaintiff who had previously petitioned the bankruptcy court for reorganization, the defendant sought dismissal of the suit on the ground that the Act unconstitutionally conferred Article III judicial power upon judges who lacked life tenure and protection against salary diminution.
The Supreme Court held the Bankruptcy Act was in violation of Article III, and not subject to any exception thereto. In so holding, the court pointed out the exceptions to Article III as being limited to:
... three narrow situations not subject to that command [of Article III], each recognizing a circumstance in which the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent with, rather than threatening to, the constitutional mandate of separation of powers. These precedents simply acknowledge that the literal command of Art. III, assigning the judicial power of the United States to courts insulated from Legislative or Executive interference, must be interpreted in light of the historical context in which the Constitution was written, and of the structural imperatives of the Constitution as a whole.
458 U.S. at 64, 102 S.Ct. at 2868, 73 L.Ed.2d at 610-11. The Court went on to list the three exceptions as: "territorial courts," "courts-martial," and "legislative courts and administrative agencies created by Congress to adjudicate cases involving public rights." The public rights doctrine was explained as follows:
The "public rights" doctrine was first set forth in Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 15 L.Ed. 372 (1856):
"[W]e do not consider congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination. At the same time there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." Id. at 284 (emphasis added).
This doctrine may be explained in part by reference to the traditional principle of sovereign immunity, which recognizes that the Government may attach conditions to its consent to be sued. See id., at 283-285; see also Ex parte Bakelite Corp., 279 U.S. 438, 452, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929). But the public-rights doctrine also draws upon the principle of separation of powers, and a historical understanding that certain prerogatives were reserved to the political Branches of Government. The doctrine extends only to matters arising "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," Crowell v. Benson, 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932), and only to matters that historically could have been determined exclusively by those departments.... [Emphasis original.]
458 U.S. at 67-68, 102 S.Ct. at 2869, 73 L.Ed.2d at 612-13.
*405 The public rights doctrine (and the Northern Pipeline case in particular) has been highly criticized. See Redish, Legislative Courts, Administrative Agencies, and the Northern Pipeline Decision, 1983 Duke L.J. 197 (1983). In fact, Justice White in his dissent to Northern Pipeline indicates that some members of the court regret the introduction of the doctrine into U.S. jurisprudence:
The complicated and contradictory history of the issue before us leads me to conclude that Chief Justice Vinson and Justice Harlan reached the correct conclusion: There is no difference in principle between the work that Congress may assign to an Art. I court and that which the Constitution assigns to Art. III courts. Unless we want to overrule a large number of our precedents upholding a variety of Art. I courts  not to speak of those Art. I courts that go by the contemporary name of "administrative agencies"  this conclusion is inevitable. It is too late to go back that far; too late to return to the simplicity of the principle pronounced in Art. III and defended so vigorously and persuasively by Hamilton in The Federalist Nos. 78-82.
458 U.S. at 113, 102 S.Ct. at 2893, 73 L.Ed.2d at 642.
Since Northern Pipeline, the Supreme Court has clarified its position on the public rights doctrine in Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985),[11] wherein the Court held:
[T]he Court has long recognized that Congress is not barred from acting pursuant to its powers under Article I to vest decisionmaking authority in tribunals that lack the attributes of Article III courts....
The Court's most recent pronouncement on the meaning of Article III is Northern Pipeline. A divided Court was unable to agree on the precise scope and nature of Article III's limitations. The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review. 458 U.S., at 84, 102 S.Ct., at 2878 (plurality opinion); id., at 90-92, 102 S.Ct., at 2881-2882 (opinion concurring in judgment); id., at 92, 102 S.Ct., at 2882 (BURGER, C.J., dissenting.)
. . . . .
This theory that the public/private rights dichotomy of Crowell and Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 15 L.Ed. 372 (1856), provides a bright-line test for determining the requirements of Article III did not command a majority of the Court in Northern Pipeline. Insofar as appellees interpret that case and Crowell as establishing that the right to an Article III forum is absolute unless the Federal Government is a party of record, we cannot agree. Cf. Northern Pipeline Construction Co., 458 U.S., at 71, 102 S.Ct., at 2871 (plurality opinion) (noting that discharge in bankruptcy, which adjusts liabilities between individuals, is arguably a public right). But see id., at 69, n. 23, 102 S.Ct., at 2870, n. 23. Nor did a majority of the Court endorse the implication of the private right/public right dichotomy that Article III has no force simply because a dispute is between the Government and an individual. Compare id., at 68, n. 20, 102 S.Ct., at 2870, n. 20, with id., at 70, n. 23, 102 S.Ct., at 2870, n. 23.
. . . . .
The enduring lesson of Crowell is that practical attention to substance rather than doctrinaire reliance on formal categories should inform application of Article III.

. . . . .

*406 ... In essence, the public rights doctrine reflects simply a pragmatic understanding that when Congress selects a quasi-judicial method of resolving matters that "could be conclusively determined by the Executive and Legislative Branches," the danger of encroaching on the judicial powers is reduced....
473 U.S. at 584-589, 105 S.Ct. at 3334-3337, 87 L.Ed.2d at 421-25.
We believe that a comparison of the provisions of the U.S. and the Louisiana Constitutions reveals the need for the public rights doctrine on the federal level but not on the state level. The U.S. Constitution provides only minimal guidelines for the federal judicial system and establishes only one court  the Supreme Court. Article III allows "inferior courts" to be established at the discretion of Congress. Further in Article I, Section 8, Congress is given the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Although the Constitution provides Congress with these plenary powers, it was necessary to create the jurisprudential doctrine of public rights to distinguish legislative courts and the quasi-judicial powers of administrative agencies as exercising primarily legislative or executive functions under Article I from the vesting of judicial powers under Article III.
In contrast, the Louisiana Constitution, in Article V, provides a detailed framework for a three-tiered court system in Louisiana, encompassing district courts, courts of appeal, and a supreme court. Article V expressly delineates the jurisdiction, composition, organizational structure, and geographical districts for each court. Implicit in the Louisiana Constitution is the legislative authority to vest quasi-judicial powers in administrative agencies as indicated in Article IV, Section 1, which provides for the creation of various "executive offices, agencies, and instrumentalities of the state," and in particular, Article IV, Section 1(C), which provides that "[r]eallocation of the functions, powers, and duties of all departments, offices, agencies, and other instrumentalities of the executive branch, except those functions, powers, duties, and responsibilities allocated by this constitution, shall be provided by law"; and Article V, Section 10, which provides, "[e]xcept as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts." [Emphasis added.] Thus, the allocation of powers by the Legislature to administrative agencies was obviously contemplated by the redactors of the Constitution. Expressly prohibited is legislative tampering with the jurisdiction of the district court, as stated in Article V, Section 16, supra, and Article V, Section 15, which provides:
The district, family, juvenile, parish, city, and magistrate courts existing on the effective date of this constitution are retained. Subject to the limitations in Sections 16 and 21 of this Article, the legislature by law may abolish or merge trial courts of limited or specialized jurisdiction. The legislature by law may establish trial courts of limited jurisdiction[12] with parishwide territorial jurisdiction and subject matter jurisdiction which shall be uniform throughout the state. The office of city marshal is continued until the city court he serves is abolished. [Emphasis added.]
Also pertinent is Article III, Section 12(A)(3), providing:
Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
. . . . .
(3) Concerning any civil or criminal actions, including changing the venue in civil or criminal cases, or regulating the practice or jurisdiction of any court....
*407 While the Congress is authorized under the U.S. Constitution to establish federal courts, the Louisiana Constitution prohibits the exercise of such power except as authorized therein.

CONCLUSION
We conclude that the introduction of the public rights doctrine is unnecessary in the State of Louisiana, as an adequate provision is made in our constitution for the vesting of quasi-judicial powers in administrative agencies. Further, the Legislature is given authority to provide for and legislate regarding trial courts of limited jurisdiction; therefore, there is no need in Louisiana to provide for a jurisprudential doctrine for the creation of "legislative" courts. Although review by the court of appeal alone would satisfy due process, and the public rights doctrine would not require the additional burden of review by a trial court (i.e., district court), our constitution imposes the mandate that exclusive original jurisdiction of all matters involving the state be vested in the district court. Thus, we find the public rights doctrine inapplicable in this state. Even were we to apply the public rights doctrine herein, the additional provisions in our constitution not present in the federal constitution, expressly restricting legislative power to alter the court system, would produce the same result.
We believe the wiser approach to this issue would be to refrain from adopting the federal public rights doctrine into the jurisprudence of this state, as it conflicts with the intent and purpose of the Louisiana Constitution. To the extent prior decisions of this court are inconsistent, they are hereby overruled.[13]
Accordingly, we find LSA-R.S. 30:2024 to be unconstitutional. The decision of the Nineteenth Judicial District Court in CA 90 0724 is reversed in part and rendered. The appeals in Docket Numbers CA 89 0906, CA 90 0516, and CA 90 1525 are transferred to the district court for disposition in accordance with the Administrative Procedure Act, LSA-R.S. 49:950 et seq.[14] The costs of these appeals, $893.68 in CA 89 0906, $1,115.09 in CA 90 0516 c/w CA 90 0724, and $1,407.16 in CA 90 1525, are to be divided equally between the appellants and appellee, State of Louisiana, Department of Environmental Quality.
REVERSED AND RENDERED IN PART, TRANSFERRED IN PART.
WATKINS, SHORTESS and LOTTINGER, JJ., dissent and will assign reasons.
FOIL, J., dissents.
LOTTINGER, Judge, dissenting.
I respectfully dissent.
These consolidated matters are before this court on direct appeals from final decisions of the Secretary of the Department of Environmental Quality and from appeals from the trial court on the question of subject matter jurisdiction. Regardless, they all result from some action or inaction of the Department of Environmental Quality performing its assigned functions as a department in the executive branch of state government.
The State of Louisiana, as sovereign, is immune from suit and liability except "in contract or for injury to person or property." La. Const. art. XII, § 10(A). Putting aside any arguments of "due process," the state is immune from suit except as provided by the Louisiana Constitution. The legislature may waive sovereign immunity in suits other than contract or injury to person or property, and in doing so, "shall *408 provide a procedure." La. Const. art. XII, § 10(B), (C).[1]
Obviously, these proceedings are neither in contract nor for injury to person or property. Therefore, it must follow that these proceedings fall outside the waiver of immunity as found in Article XII, § 10(A). Since these proceedings fall outside the waiver of immunity provisions, the legislature must waive sovereign immunity and provide a procedure before they can proceed. As to matters within the authority of the Department of Environmental Quality, the legislature has done just that. La. R.S. 30:2024.
The argument advanced that La.R.S. 30:2024 is unconstitutional because it is in violation of the district courts' original jurisdiction as provided by La. Const. art. V, § 16(A)[2] is not convincing. The Louisiana Supreme Court in Moore v. Roemer, 567 So.2d 75 (La.1990), expressly left the door open in matters such as now before this court.
Considering the constant position taken by the judiciary that all acts of the legislature are presumed constitutional and that the courts should maintain the constitutionality of acts of the legislature if at all possible, we need look no further that Article V, § 16(A) upon which the majority rests its argument for unconstitutionality.
The very first clause of Article V, § 16(A) provides "[e]xcept as otherwise authorized by this constitution," thus indicating that there may be instances wherein the district courts do not have original jurisdiction. The "except" clause is general in that it does not require an express or a specific authorization elsewhere in the constitution. Thus a general authorization elsewhere in the constitution is sufficient, and we are not limited to the two express authorizations such as appeals from the Louisiana Public Service Commission directly to the supreme court, La. Const. art. IV, § 21(E), and appeals from the Louisiana Civil Service Commission to the court of appeal, La. Const. art. X, § 12(A).
When the "except" clause of Article V, § 16(A) is read in pari materia with Article XII, § 10, it becomes apparent that as to those proceedings in which the state can exercise its sovereign immunity, the legislature is at liberty to establish a procedure different from that as provided in Article V. This is exactly what the legislature has done in La.R.S. 30:2024.
Therefore, I find nothing unconstitutional in La.R.S. 30:2024 and respectfully dissent.
WATKINS, SHORTESS and FOIL, Judges, dissenting.
In Moore v. Roemer, 560 So.2d 927 (La. App. 1st Cir.), affirmed, 567 So.2d 75 (1990), four members of that five-man panel foresaw the very issue that in these proceedings comes before this court enbanc, *409 and expressly contrasted DEQ to the Office of Worker's Compensation (OWC): the latter we found to impinge upon the original jurisdiction of the judiciary, vested exclusively in the district courts by Article V, Section 16(A). Moore, 560 So.2d at 934. Based upon the concept of "public rights," DEQ was distinguished from OWC, Id.[1]
Like our federal government, Louisiana's state government follows a tripartite division of power, and no branch may exercise the power of another. LSA-Const. Art. II, §§ 1 and 2. Like the federal judiciary, the state judiciary has been recognized as possessing inherent powers pursuant to this separation of power "to do all things reasonably necessary for the exercise of their functions as courts." Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La. 1983). Unlike the congress, however, the state legislature possesses plenary power which is limited only by constitutional constraints. Swift v. State, 342 So.2d 191, 194 (La.1977).
Article V, § 16, of the state constitution vests original jurisdiction of "all civil ... matters" and exclusive original jurisdiction of "cases involving ... the state ... as a defendant," LSA-Const. Art. V, § 16(A). Likewise, Article V, § 10, vests in the legislature the power to proscribe the scope of review by the courts of appeal over "administrative agency determinations." LSA-Const. Art. V, § 10(B).[2] In addition, the legislature is not only empowered but required to establish laws to implement the constitutional mandate of environmental protection. LSA-Const. Art. IX, § 1. Lastly, while the constitution grants no immunity from suits in contract and in tort, in other instances power to waive sovereign immunity is vested in the legislature.[3] LSA-Const. Art. 12, § 10.[4]
It is with this overall constitutional framework in mind that the scope of Article V, § 16 A, and the distinction between original and appellate jurisdiction must be defined. Constitutional provisions, like other laws, must be interpreted in pari materia, LSA-C.C. art. 13; Aguillard v. Treen, 440 So.2d 704, 707 (La.1983) ("[c]onstitutional provisions are to be construed and interpreted by the same rules as are other laws") (citations omitted).
The flaw in the majority's reasoning is their extraction out of context of the language in Article V, § 16 A, and the remark in Moore v. Roemer, 567 So.2d 75, 79 (La. 1990), that "[n]othing in the constitution suggests any intent that a separate category of innominate matters should be excluded from these all-inclusive terms," without recognizing that implicit in both is a presupposition that the "matter" is one committed to the judicial branch. The constitutional violation in Moore was the divestiture of the district courts' judicial power, LSA-Const. Art. V, § 1, to adjudicate a private dispute between employee and employer over private liability, albeit imposed by operation of a fairly complex statutory scheme. In Moore, the executive, through OWC, was attempting to exercise judicial power by divesting the district court of its original jurisdiction, we correctly held this attempt to be violative of the constitutional division of power. In contrast, DEQ functions as an executive entity, LSA-Const. Art. 4, § 1, and exercises *410 executive power when it decides matters within its constitutional mandate.[5]
Appellants do not argue and the majority does not dispute that the standard of judicial review articulated in LSA-R.S. 49:964.[6] is in violation of the original jurisdiction of the original jurisdiction of the district court set forth in Art. V, Section 16(A), of the Louisiana Constitution. The majority states this is so because "original jurisdiction encompasses both trial de novo and judicial review of a record." Judicial review, however, is the exercise of appellate jurisdiction. Loop v. Collector of Revenue, 523 So.2d 201 (La.1987) (on rehearing). The legislature, under its plenary powers, has prescribed a right to and procedure for review. LSA-Const. Art. XII, § 10(C). Under the constitutional framework and the statutes enacted pursuant thereto, appellants have no right to invoke the judicial power of the courts to decide in the first instance whether a permit should issue.
A basic rule of statutory construction requires that, if a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional, we must adopt the interpretation which will maintain its constitutionality. Houndroulis v. Schuhmacher, 553 So.2d 398, 416 (La.1989), and cases cited therein.
A review limited to the record of a matter decided by an initial adjudicative tribunal is an exercise of the reviewing court's appellate, not original, jurisdiction. By definition, appellate jurisdiction is the power to review the judgment of another tribunal, and, generally, a court's review of an administrative tribunal action is considered functionally to be an exercise of its appellate review jurisdiction.[7]Loop, Inc. v. Collector of Revenue, 523 So.2d 201.
Section 16(B) of Article V of the Louisiana Constitution provides that "[a] district court shall have appellate jurisdiction as provided by law." By virtue of this provision the legislature has the authority to invest the district court with appellate jurisdiction. The majority acknowledges that trial de novo and judicial review of a record are not synonymous, but errs when it holds that judicial review of a record is a function of original jurisdiction. The constitutional authors clearly recognized the distinction between original jurisdiction and appellate jurisdiction with Section 16(B), because if review of a record is a function encompassed within the district court's original jurisdiction there would have been no need for this provision. It is well established *411 that a court cannot construe a constitutional provision as surplusage.
The majority mischaracterizes the "public rights" concept as a federal doctrine arising essentially from the peculiarity of Article III of the U.S. Constitution. The doctrine is, in fact, premised chiefly upon the notion that the executive may exercise its power through quasi-judicial procedure. Northern Pipeline v. Marathon Pipe Line, 458 U.S. 50, 102 S.Ct. 2858, 2869, 73 L.Ed.2d 598 (1982) ("[t]he public-rights doctrine is grounded in a historically recognized distinction between matters that could be conclusively determined by the Executive and Legislative ... and matters that are inherently judicial"). As a corollary, the doctrine results also from the notion that where otherwise the government would be immune from suit, the waiver of sovereign immunity may be conditional. Id.
The public-rights doctrine was criticized in Thomas v. Union Carbide, 473 U.S. 568, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985), only insofar as its proponents were asserting that it created a bright-line test. The Supreme Court simply refused to elevate form over substance, and looked to the rights involved to determine whether Article III mandates an exercise of judicial power. Id. 105 S.Ct. at 3336. It should be noted that Union Carbide involved compensation through an FDA regulated scheme between private entities for the use by one manufacturer of the data compiled by another manufacturer for its product registration purposes. The court in Union Carbide refused to hold that the regulatory provisions created a "private right" to compensation and concluded:
Congress has the power, under Article I, to authorize an agency administering a complex regulatory scheme to allocate costs and benefits among voluntary participants... without providing an Article III adjudication.
Id. 105 S.Ct. at 3337.
In the matter at bar, our legislature has plenary power to enact any law not prohibited by the constitution. Not only are the statutes here at issue within that broad grant of power, they are expressly within the legislature's grant of power to provide for appellate review under the judiciary article. See LSA-Const. Art. V, §§ 10 and 16(B).
We respectfully dissent.
NOTES
[1] In CA 90 0724, Chemical Waste Management, Inc., had filed suit in the Nineteenth Judicial District Court following the issuance of a permit to it by the Secretary of DEQ for hazardous waste treatment, storage and disposal. The suit sought review of the Secretary's actions because of differences between the final permit issued and the draft permit on which the hearing was held, and requested a declaratory judgment that LSA-R.S. 30:2024 was unconstitutional. This action by Chemical Waste Management, Inc., was in addition to a direct appeal of the Secretary's action in CA 90 0516 under Section 2024; therefore, the two matters were consolidated.
[2] Acts 1989, No. 454 eliminated the appeals panel so that decisions by the hearing officer went directly to the Court of Appeal.
[3] The language mandating a public hearing if one were requested was removed from later versions of the statute. This action by the legislature thus suggests that hearings are not required, contrary to arguments by various of the parties herein, but that the decision to hold same rests within the discretion of the secretary.
[4] Senate Concurrent Resolution No. 3 of the 1983 Second Extraordinary Session suspended Acts 1983, No. 97 until the sixtieth day after adjournment of the 1984 Regular Session of the Legislature. However, the Governor, by Executive Order No. 83-30, challenged the validity of SCR No. 3 and directed implementation of Acts 1983, No. 97. Subsequently, Acts 1984, No. 342, § 2, repealed Senate Concurrent Resolution No. 3 of the Second Extraordinary Session of 1983.
[5] Prior to the 1990 amendment, LSA-R.S. 2024 read:

A. Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant the relief requested or forward the request to the court of appeal.
B. Notwithstanding the provisions of Subsection A of this Section, if the secretary finds that an emergency exists which requires that immediate action be taken, he shall issue such permits, variances, or other orders as necessary, which shall be effective immediately upon issuance, and any appeal or request for review shall not suspend the implementation of the action ordered.
C. Any person aggrieved by a final decision or order of the secretary may appeal therefrom to the Court of Appeal, First Circuit, if a motion for an appeal is filed with the secretary within thirty days after the final decision or order is served upon the respondent. Any preliminary, procedural, or intermediate ruling or decision by the secretary is subject to the supervisory jurisdiction of the appellant court as provided by Article V, Section 10 of the Constitution of Louisiana. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals. The provisions of R.S. 49:962 and 964 shall not apply to decisions and orders of the secretary.
[6] The legislature responded to this mandate by providing for the Commission on Ethics for Public Employees and the Board of Ethics for Elected Officials. Appeals taken from these agencies are routed to the First Circuit Court of Appeal under LSA-R.S. 42:1142.
[7] Earlier discussions of original versus appellate jurisdiction relative to review by district courts of administrative agencies may be found in Loop, Inc. v. Collector of Revenue, 523 So.2d 201 (La.1987) on rehearing; Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971); and Tanner v. City of Baton Rouge, 422 So.2d 1263 (La.App. 1st Cir. 1982), among other cases.
[8] We note that a constitutional amendment was recently passed by popular vote of the people of Louisiana, providing for direct appeal from the Office of Worker's Compensation to the First Circuit Court of Appeal.
[9] The following executive departments, boards or agencies are subject to specific statutory provisions directing appeals from their decisions to the district court:

Advisory Commission on Pesticides (La.R.S. 3:3214, La.R.S. 3:3224), Alcohol Beverage Control Board (La.R.S. 33:4788), Board of Adjustment (Soil and Water Conservation Districts  La.R.S. 3:1212), Board of Adjustment (Zoning Districts  La.R.S. 33:4727), Board of Barber Examiners (La.R.S. 37:388), Board of Examiners in Watchmaking (La.R.S. 37:1606), Board of Tax Appeals (La.R.S. 47:1435), Certified Stress Analysts Board (La.R.S. 37:2883), Commissioner of Agriculture (La.R.S. 3:4114), Commissioner of Alcohol Beverage Control (La.R.S. 26:106), Commissioner of Financial Institutions (La.R.S. 6:134), Commissioner of Insurance (La.R.S. 22:1360), Dairy Stabilization Board (La.R.S. 3:4114), Department of Conservation (La.R.S. 30:12, La.R.S. 30:926), Department of Health and Human Resources (La.R.S. 28:426*, La.R.S. 40:2110), Department of Public Safety and Corrections (La. R.S. 32:414), Department of Transportation and Development (La.R.S. 2:14), Drainage Districts (La.R.S. 38:1617), Environmental Protection Districts (La.R.S. 33:7559), Fire Marshal (La.R.S. 40:1577), Governor's Consumer Protection Division (La.R.S. 51:1405), Louisiana Board for Hearing Aid Dealers (La. R.S. 37:2463), Louisiana Licensed Professional Counselors Board of Examiners (La.R.S. 37:1110*), Louisiana Motor Vehicle Commission (La.R.S. 6:873, La.R.S. 6:953), Louisiana Private Employment Service Advisory Council (La.R.S. 23:108), Louisiana Real Estate Commission (La.R.S. 37:1456, La.R.S. 37:3409), Louisiana State Board of Dentistry (La.R.S. 37:786.1), Louisiana State Board of Certification for Substance Abuse Counselors (La.R.S. 37:3379*), Louisiana State Board of Cosmetology (La.R.S. 37:552), Louisiana State Board of Elementary and Secondary Education (La. R.S. 17:3105*, La.R.S. 17:3141.7), Louisiana State Board of Examiners of Psychologists (La.R.S. 37:2356*), Louisiana State Board of Examiners for Speech Pathology and Audiology (La.R.S. 37:2663), Louisiana State Board of Medical Examiners (La.R.S. 37:3252*), Louisiana State Board of Nursing (La.R.S. 37:976), Louisiana State Board of Physical Therapy Examiners (La.R.S. 37:2413*), Louisiana State Livestock Sanitary Board (La.R.S. 3:668), Louisiana State Polygraph Board (La.R.S. 37:2851), Louisiana State Racing Commission (La.R.S. 4:158), Louisiana State Radio and Television Technicians Board (La.R.S. 37:2315), Louisiana Used Motor Vehicle and Parts Commission (La.R.S. 32:761, La.R.S. 32:776), Municipal Condemnations (La.R.S. 33:4764), Radiologic Technology Board of Examiners (La.R.S. 37:3219*), Registrar of Voters (La.R.S. 18:53*), State Board of Architectural Examiners (La.R.S. 37:153*), State Board for Contractors (La.R.S. 37:2158), State Board of Examiners of Interior Designers (La. R.S. 37:3181), State Board of Registration for Professional Engineers and Land Surveyors (La.R.S. 37:699*). [*Although these statutes do not specifically name the district court, they invoke the Administrative Procedure Act which dictates proceedings for review be filed in the district court of the parish in which the agency is located. La.R.S. 49:964.]
The following statutes refer to review by the "court" system or a "court of competent jurisdiction": Board of Examiners of Certified Shorthand Reporters (La.R.S. 37:2557), Department of Employment and Training (La. R.S. 23:10), Historic Preservation Districts (La.R.S. 25:763), Louisiana Board of Pharmacy (La.R.S. 37:1229), Louisiana State Board of Certified Social Work Examiners (La.R.S. 37:2713), Louisiana State Board of Optometry Examiners (La.R.S. 37:1062), Louisiana Wildlife and Fisheries Commission (La.R.S. 56:7), Seed Commission (La.R.S. 3:1442). However, the Administrative Procedure Act, providing for review in the district court, applies to the final orders or decisions of each "state board, commission, department, agency, officers, or other entity...."
LSA-R.S. 49:951, 964.
[10] We note that the example used by the supreme court in Moore v. Roemer, to distinguish a matter of public interest from a matter of private interest, i.e., the area of unemployment compensation administration, involves an agency that is subject to review by the district court under La.R.S. 23:1634. See 567 So.2d at p. 81.
[11] In the later case of Granfinanciera v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court discussed the effect of the public rights doctrine on the Seventh Amendment right of trial by jury.
[12] La.C.C.P. art. 4832 defines trial courts of limited jurisdiction as "parish court, city courts, and justice of the peace courts."
[13] A contrary result was reached in the following cases, which we expressly overrule: Marine Shale Processors, Inc. v. State, Department of Environmental Quality, 551 So.2d 643 (La.App. 1st Cir.), writ denied, 553 So.2d 465 (La.1989), and 543 So.2d 487 (La.App. 1st Cir.1989).
[14] It was noted in Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984), that because of the prohibition contained in LSA-R.S. 30:1072 (now LSA-R.S. 30:2024) against the application of the Administrative Procedure Act, it was not applicable to appeals taken thereunder. However, since we find that LSA-R.S. 30:2024 is unconstitutional, the provisions of LSA-R.S. 49:950 et seq. are as a result applicable.
[1] La. Const. art. XII, § 10 provides:

§ 10. Suits Against the State
Section 10. (A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
[2] La. Const. art V, § 16 provides:

§ 16. District Courts; Jurisdiction
Section 16. (A) Original Jurisdiction. Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters. It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office or other public position; civil or political rights; probate and succession matters; the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships.
(B) Appellate Jurisdiction. A district court shall have appellate jurisdiction as provided by law.
[1] We distinguished review of an agency determination in Marine Shale Processors v. DEQ, 543 So.2d 487 (La.App. 1st Cir.1989), stemming from LSA-Const. Art. V, § 10(B), from "the quasi-judicial determinations which would result from OWC hearings [which] involve private rights." See Moore, 560 So.2d at 934.
[2] LSA-Const. Art. V, § 10(A), vests appellate jurisdiction of the courts of appeal over "all ... civil matters decided within its circuit."
[3] See Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La.L.Rev. 647, 650 (1983).
[4] We fully agree with the discussion of sovereign immunity in Judge Lottinger's dissent; however, it states only half of the proposition. While Article XII, § 10, specifically recognizes the power of the legislature to waive sovereign immunity and provide a procedure, the procedure must necessarily be consistent with the remaining pertinent constitutional provisions, most notably Article V. We believe that the present scheme for DEQ is entirely consistent with the constitution as a whole, and state our reasons more fully hereinafter.
[5] The legislative power to create DEQ as an executive entity derives from Article IX, § 1, of the Louisiana Constitution.
[6] While LSA-R.S. 49:962 is expressly inapplicable to agency review by the appellate court, LSA-R.S. 30:2024, this is because the scheme of review incorporated in the Administrative Procedure Act, LSA-R.S. 49:950-971, contemplates review by the district court. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1158 (La.1984) ("[t]he change in the appellate forum for environmental cases appears to be the only reason for making § 964 inapplicable ..."). The standard of review found in LSA-R.S. 49:964 has nevertheless been adopted as the jurisprudential standard of review  essentially there is no difference between the two. Save Ourselves, 452 So.2d at 1158-60.
[7] Justice Dennis explained:

Under the 1921 Louisiana Constitution, a district court's appellate jurisdiction was expressly restricted to the review of decisions of several specifically named municipal and justice of peace courts. La. Const. 1921, Art. VII, § 36. In order to pay respect to this provision and yet afford litigants judicial review of administrative actions by district courts, this court held that such review could be conducted as an exercise of a district court's original rather than its appellate jurisdiction. Bowen v. Doyal, supra. Because the 1974 Louisiana Constitution restores the legislature's plenary power to define district court appellate jurisdiction, the obstacle to legislation vesting the district courts with appellate jurisdiction including judicial review of administrative actions has been removed. La. Const. 1974, Art. V, § 16(B). Therefore, we conclude that under the 1974 Louisiana Constitution a legislative act establishing procedures for judicial review of an administrative tribunal decision by a district court, should properly be considered to be a law providing for that court's appellate jurisdiction. Accord: Touchette v. City of Rayne, Municipal Fire & Police Civil Service Board, 321 So.2d 62 (La.App. 3d Cir. 1975).
523 So.2d at 203 n. 1.